UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-cv-20788-JEM/Becerra

RICKENBACKER MARINA, INC.,

    Plaintiff,

v.

M/Y SANCOCHO, a 2015, 23' Sportsman
bearing hull identification number
SMNSH481H415, her engines,
tackle, equipment, rigging, furniture,
appurtenances, etc., *in rem* and
JUAN OCHOA, *in personam*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** came before the Court on Plaintiff Rickenbacker Marina, Inc.'s ("Plaintiff" or the "Marina") Motion for Final Default Judgment against Defendant M/Y Sancocho (the "Motion"), ECF No. [25]. In support of the Motion, Plaintiff filed the declaration of Aabad Melwani, the President of the Marina. ECF No. [25-1]. Defendant M/Y Sancocho did not file a response to the Motion and the time to do so has passed. Upon due consideration of the Motion and supporting declaration, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Motion, ECF No. [25], be **GRANTED**.

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [26].

I. **BACKGROUND**

This is an action to enforce a maritime lien against Defendant M/Y Sancocho, a 2015, 23' Sportsman vessel bearing hull identification number SMNSH481H415, including her engines, tackle, equipment, rigging, furniture, and appurtenances (the "Defendant Vessel"), for unpaid storage, as well as an action for breach of maritime contract against the Defendant Vessel's owner, Defendant Juan Ochoa ("Ochoa"). ECF No. [1] ¶ 1. Plaintiff is a Florida corporation in the business of providing storage space to vessels. *Id.* ¶ 5.

According to the Complaint, ECF No. [1], on or about March 25, 2015, Ochoa and Plaintiff entered into a contract to store the Defendant Vessel at the Marina for $598.00 per month (the "Storage Contract"). *Id.* ¶ 7. The Storage Contract is attached to the Complaint as Exhibit 1. ECF No. [1-1]. Plaintiff stored the Defendant Vessel as contracted, and Ochoa initially paid the fee as contracted. ECF No. [1] ¶¶ 13–14. On January 1, 2019, Plaintiff increased the storage fees from $598.00 to $750.00 per month "in accordance with Paragraph 14 of the Terms and Conditions of" the Storage Contract. *Id.* ¶ 8; *see also* ECF Nos. [1-1] ¶¶ 14, 16, 29; [1-2]. In August 2021, Ochoa stopped paying the monthly storage fee as due under the Storage Contract. ECF No. [1] ¶ 14.[2] Although Ochoa has ceased payment of the storage fee, the Defendant Vessel remains at the Marina. *Id.* ¶ 15.

Plaintiff filed the Complaint on March 16, 2022. ECF No. [1]. The Complaint asserts one count for Enforcement of a Maritime Lien against the Defendant Vessel ("Count 1") and one count for breach of the Storage Contract against Ochoa ("Count 2"). *Id.* Plaintiff asserts Count 1 pursuant to 46 U.S.C. § 31342, seeking to enforce a maritime lien against the Defendant Vessel

---

[2] The Complaint contains a typographical error stating that Defendant Ochoa ceased payments in August 2022, however, the Complaint was filed in March 2022, five months prior to that date. In later filings, Plaintiff corrects the date to reflect that the payments ceased in August 2021.

2

for "the sums due for necessaries supplied to the [Defendant] Vessel," namely, "the necessary of storage to the [Defendant Vessel] at the direction of the yacht's owner." *Id.* ¶¶ 18–21. Plaintiff alleges that the Defendant Vessel is indebted to Plaintiff "in the sum of Eight Thousand Nine Hundred-Ten Dollars and Zero Cents ($8,910.00) for the storage provided" due to the Defendant Vessel's non-payment of the fees due for storage since August 2021. *Id.* ¶¶ 22–23. Plaintiff asserts Count 2 against Defendant Ochoa only, alleging breach of the Storage Contract for failure to pay the storage fees beginning in August 2021. *Id.* ¶¶ 27–28. Plaintiff seeks a total of $9,140.00 from Defendants, plus pre- and post-judgment interest, taxable costs, and an order permitting the sale of the Defendant Vessel to satisfy the judgment. *Id.* at 5–7.

### A. Defendant Ochoa Defaults

Defendant Ochoa was served with the Summons and Complaint on July 14, 2022. *See* ECF No. [9] (return of service). When Ochoa failed to respond, Plaintiff filed a Motion for Clerk's Default against him, which was entered by the Clerk of Court. ECF Nos. [10], [11].

On August 22, 2022, the District Court entered an Order on Final Default Judgment Procedure as to Defendant Ochoa. ECF No. [15]. Therein, the Court ordered Defendant Ochoa to respond to the Complaint on or before September 2, 2022 and file a motion to set aside the Clerk's Default that shows good cause for failure to timely respond to the Complaint. *Id.* at 1. Additionally, the Court ordered Plaintiff to file a motion for final default judgment on or before September 9, 2022, and "***immediately*** send a copy of th[e] Order to Defendant [Ochoa] and file a certificate of service on the record." *Id.* at 1–2 (emphasis added).

On September 9, 2022, Plaintiff filed a Motion for Default Judgment against Defendant Ochoa only. ECF No. [16]. The District Court denied the motion for failure to comply with the Court's Order on Final Default Judgment Procedure, as Plaintiff failed to file a certificate of

3

service.  ECF No. [17].  On September 15, 2022, Plaintiff filed a Renewed Motion for Default Judgment against Defendant Ochoa only.  ECF No. [18].  The District Court again cited Plaintiff's noncompliance with the Court's Order on Final Default Judgment Procedure, as Plaintiff failed to "immediately" mail a copy of the Order to Ochoa, and instead mailed a copy of the Order on September 15, 2022, the same date that it filed its Renewed Motion for Default Judgment.  ECF No. [19].  Accordingly, the Court provided an extended deadline for Defendant Ochoa's response to the Renewed Motion, and "defer[red] ruling on the Renewed Motion until this deadline has passed." *Id.*

### B. The Defendant Vessel Defaults

On July 12, 2022, Plaintiff filed two motions relating to service on and storage of the Defendant Vessel.  *See* ECF Nos. [4]–[6].  First, Plaintiff filed a Motion for Issuance of Warrant of Arrest in rem against the Defendant Vessel.  ECF No. [4].  The District Court granted the Motion for Issuance of Warrant of Arrest on August 19, 2022, and directed the Clerk to issue the same.  ECF No. [12].  The Clerk issued the Warrant of Arrest the same day.  ECF No. [13].

Second, Plaintiff filed a Motion for Appointment of Substitute Custodian, requesting that the Court appoint Plaintiff as substitute custodian of the Defendant Vessel after its arrest.  ECF No. [5].  Plaintiff represented that the Defendant Vessel was being stored at the Marina in "Dry Storage A9" and if approved by the Court, Plaintiff would be "prepared to provide security, storage, and routine services for the safekeeping of the [Defendant V]essel at a cost substantially less than that is required by the Marshal," namely, a rate of $15,000.00 per month.  *Id.* at 2.  The District Court entered an Order Appointing Substitute Custodian on August 22, 2022.  ECF No. [14].  Therein, the Court appointed Plaintiff as the substitute custodian of the Defendant Vessel until further order of the Court.  *Id.* at 1–2.

On September 30, 2022, Plaintiff arrested the Defendant Vessel. *See* ECF No. [20] (return of warrant for arrest). On November 2, 2022, Plaintiff filed a Notice of Publishing of Notice of Action *in rem* and Arrest of Vessel, certifying that it published its Notice in the Daily Business Review on October 21, 2022, which was within 21 days of the arrest. ECF No. [21]. A copy of the publication was attached as Exhibit A to the Notice of Publishing. ECF No. [21-1].

Thereafter, on December 12, 2022, Plaintiff filed a Motion for Clerk's Default against the Defendant Vessel, which was entered and signed by the Clerk of Court. ECF Nos. [22], [23]. On December 29, 2022, the District Court entered an Order on Final Default Judgment Procedure as to the Defendant Vessel. ECF No. [24]. Therein, the Court noted that Plaintiff properly filed its Notice and Affidavit of Publication on November 2, 2022, and that as of December 13, 2022, no claims had been filed. *Id.* at 1. The Court ordered Plaintiff to file its final motion for default judgment against the Defendant Vessel on or before January 27, 2023. *Id.* at 2.

### C. The Instant Motion

Plaintiff timely filed the instant Motion for Final Default Judgment Against the Defendant Vessel and Motion for Judicial Sale. ECF No. [25]. In the instant Motion, Plaintiff seeks final default judgment against the Defendant Vessel only. *Id.* at 2–4. Plaintiff argues that it properly published a Notice of Action against the Defendant Vessel in the Daily Business Review, and the deadline to appear and file a claim or responsive pleading on behalf of the Defendant Vessel has passed, thus entitling Plaintiff to a Clerk's default, which it has obtained, and a final default judgment. *Id.* at 5. Plaintiff asserted only Count 1 of the Complaint against the Defendant Vessel, for enforcement of a maritime lien for unpaid storage. *See* ECF No. [1]. On this count, Plaintiff seeks damages from the Vessel totaling $26,099.50, comprised of $24,900.00 in unpaid storage fees, $360.00 in late fees, and $839.50 in attorneys' fees and costs. ECF No. [25] at 1, 5–8, 14.

5

Additionally, Plaintiff requests that the Court "order the U.S. Marshal Service to see the [Vessel] at public auction in accordance with Supplemental Admiralty Rule E" and "grant [Plaintiff] the right to credit bid its judgment of $26,099.50 at the U.S. Marshal sale of the [Vessel]." *Id.* at 14.

## II. ANALYSIS

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. Subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." FED. R. CIV. P. 55(a). Upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation . . . on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1).

A default admits a plaintiff's well-plead allegations of fact. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Thus, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought." *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard).

Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quotations omitted). Rule 55 does not require an evidentiary

hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages"); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

### A. Liability

The Federal Maritime Lien Act, 46 U.S.C. § 31341, *et seq.*, grants a maritime lien to a party that provides necessaries to a vessel. *Robbie's of Key W. v. M/V Komedy III*, 470 F. Supp. 3d 1264 (S.D. Fla. 2020) (citing 46 U.S.C. § 31342). The term "necessaries," as used in the Federal Maritime Lien Act, is defined in 46 U.S.C. § 31301. Specifically, "'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4).

A maritime lien "is a special property right in a ship given to a creditor by law as security for a debt or claim, and it attaches the moment the debt arises." *Barcliff, LLC v. M/V Deep Blue, IMO No. 9215359*, 876 F.3d 1063, 1068 (11th Cir. 2017) (quoting *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010)). The maritime lien "converts the vessel itself into the obligor and allows injured parties to proceed against it directly." *Id.* (citing *Crimson Yachts*, 603 F.3d at 868).

In order to establish a maritime lien on a vessel, a party must satisfy a three-prong test based on the plain meaning of the Federal Maritime Lien Act. *Barcliff, LLC*, 876 F.3d at 1068 (citing *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1244 (11th Cir. 1999)). "[T]o obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent." *Id.* (quoting *Galehead, Inc.*, 183 F.3d at 1244). The Eleventh Circuit later added a

fourth prong to the test: that the necessaries be provided at a reasonable price. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005); *see also Barcliff, LLC*, 876 F.3d at 1075 n.5 ("*Sweet Pea Marine, Ltd. v. APJ Marine, Inc.* adds an additional requirement that necessaries be supplied 'at a reasonable price,' 411 F.3d 1242, 1249 (11th Cir. 2005), but that is not at issue in this case."). For the reasons outlined below, Plaintiff has satisfied all four elements to establish a maritime lien.

First, Plaintiff established that it provided necessaries to the Defendant Vessel. In the Complaint, Plaintiff alleges that it "provided the necessary of storage to" the Defendant Vessel, pursuant to the owner's direction in the Storage Contract. ECF No. [1] ¶¶ 20–21. The Storage Contract categorizes the service provided as "storage" or "dockage," and provides that the Defendant Vessel will be kept in "Storage Rack or Pod No. A20." ECF No. [1-1]. The definition of necessaries, as used in the Federal Maritime Lien Act, explicitly includes "the use of a dry dock or marine railway," and courts in the Eleventh Circuit have also recognized dry dock storage as a necessary in the context of maritime liens. *See e.g., Robbie's of Key W.*, 470 F. Supp. 3d at 1268 ("First, Plaintiff provided necessaries to the Defendant Vessel in the form of storage and amenities."); *Fincantieri Marine Repair LLC v. Geysir*, No. 3:22-cv-410-TJC-PDB, 2023 WL 2217272, at *7 (M.D. Fla. Feb. 4, 2023) ("The Eleventh Circuit has held dockage services—which are akin to berthage services—constitute necessaries.") (citing *City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259, 1270 (11th Cir. 2011), *rev'd on other grounds sub nom.*, *Lozman v. City of Riviera Beach*, 568 U.S. 115, 131 (2013)).

Second, Plaintiff established that the necessary of storage was provided to a "vessel" as defined in the Federal Maritime Lien Act. As used in Title 46 of the United States Code, a "vessel"

is defined as follows: "[t]he word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3; *see* 46 U.S.C. § 115 ("In this title, the term 'vessel' has the meaning given that term in section 3 of title 1."). Plaintiff alleges that the Defendant Vessel is a "2015, 23' Sportsman bearing hull identification number SMNSH481H415, [including] engines[,] tackle equipment, rigging, furniture, appurtenances, etc." ECF No. [1] at 1. Further, the Defendant Vessel is characterized as a motor yacht in the pleadings. *See generally id.* (referring to "M/Y SANCOCHO"). Plaintiff's description is sufficient to categorize the Defendant Vessel as a "vessel" for the purposes of the second prong of the maritime lien test.

Third, Plaintiff established that the storage was provided to the Defendant Vessel on the order of the owner or agent. The Federal Maritime Lien Act provides that the "owner" and the "master" of a vessel are each "presumed to have authority to procure necessaries for a vessel." 46 U.S.C. § 31341. In the Complaint, Plaintiff alleges that it "provided the necessary of storage to the [Defendant Vessel] at the direction of the yacht's owner," Defendant Ochoa. ECF No. [1] ¶ 21. The Storage Contract confirms that Defendant Ochoa agreed to provide monthly payment to Plaintiff in exchange for storage services for the Defendant Vessel. ECF No. [1-1]. Further, Defendant Ochoa actually paid for the service of storage until such payments ceased in August 2021. *See* ECF No. [1] ¶ 14. Such a showing is sufficient to establish that the necessaries were provided at the direction of Ochoa as the owner of the Defendant Vessel.

Fourth, Plaintiff established that the necessary of storage was provided at a reasonable price. Defendant Ochoa's agreement to the storage price in the contract, as well as any late fees, is satisfactory in establishing that storage was provided at a reasonable price. *See Robbie's of Key W.*, 470 F. Supp. 3d at 1268–69 (S.D. Fla. 2020) ("[T]he necessaries appear to be a reasonable

9

price as the representative of the [d]efendant [v]essel agreed to the storage price in the contract."). When Ochoa contracted with Plaintiff in 2015, the price of storage was $598.00. ECF No. 1 ¶ 7. In 2019, Plaintiff increased the storage fees to $750.00 "in accordance with Paragraph 14 of the Terms and Conditions of Storage and Service Agreement". *Id.* ¶ 8; *See* ECF No. [1-1]. According to the Complaint, Defendant Ochoa continued to pay for storage in full until August 2021, two years after the price increase. ECF No. [1] ¶¶ 8, 14. Further, Plaintiff provided a chart listing "Marina Dock Slip Rates" for another marina located in Miami which charges the same price for similarly-sized vessels. *See* ECF No. [25-2]; *See Sweet Pea Marine*, 411 F.3d at 1249 ("[T]o satisfy the evidentiary burden on this element, a plaintiff must present some modicum of evidence which compares the charges claimed with what other competitors would have charged for similar work or materials."). Thus, Plaintiff's showing is sufficient to establish that the necessaries were provided at a reasonable price. Accordingly, Plaintiff has met all elements to establish a maritime lien on the Defendant Vessel and has satisfied its burden as to liability on Count 1. The Court moves on, then, to damages.

### B. Damages

Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co.*, 777 F.2d at 1544 (quotations omitted). Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc.*, 686 F. App'x at 746–47 ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages")

(quotations omitted); *Tara Prods., Inc.*, 449 F. App'x at 911–12 (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

Plaintiff seeks a total of $26,099.50 in damages, comprised of: (1) $24,900.00 unpaid storage fees for the Defendant Vessel; (2) $360.00 in associated late fees; and (3) $839.50 in costs. *See* ECF No. [25] at 8. Plaintiff filed the affidavit of Aabad Melwani, the President of the Marina, in support of its claim for damages (the "Melwani Declaration"). ECF No. [25-1]. According to the Melwani Declaration, Defendant Ochoa agreed to pay $598.00 per month for storage of the Defendant Vessel at the Marina, which was increased to $750.00 per month on January 1, 2019. *Id.* at 3. Additionally, the Storage Contract provides:

> All charges for storage a[re] due on the first day of each month, payable in advance. Storage bills unpaid ten (10) days after the first day of each month shall be subject to a billing charge of Ten Dollars ($10.00) per month, plus interest at a rate of One and One-Half Percent (1 ½ %) PER MONTH (Eighteen Percent (18%) per annum), until paid in full. Charges for storage will continue, whether the vessel is in the storage space or not, until termination of this Agreement.

*Id.* at 3 (emphasis in original); *see also* Storage Contract, ECF No. [1-1] at 4 (same).

> Boats having dockage unpaid for three (3) months shall be charged a daily rate as printed and applicable for the size of the boat starting the fourth (4th) month.

ECF No. [25-1] at 3; *see also* Storage Contract, ECF No. [1-1] at 5 (same). Pursuant to these provisions, the Melwani Declaration calculates the damages as follows:

| UNPAID MONTHLY STORAGE | |
|---|---|
| August 2021 Storage | $750.00 |
| September 2021 Storage | $750.00 |
| October 2021 Storage | $750.00 |
| **Sub Total** | **$2,250.00** |

11

| DAILY FEES STARTING ON THE 4TH MONTH (NOVEMBER 2021) UNPAID DAILY STORAGE FEES | |
|---|---|
| November 1–30, 2021 | $1,500.00 |
| December 1–31, 2021 | $1,550.00 |
| January 1–31, 2022 | $1,550.00 |
| February 1–28, 2022 | $1,400.00 |
| March 1–31, 2022 | $1,550.00 |
| April 1–30, 2022 | $1,500.00 |
| May 1–31, 2022 | $1,550.00 |
| June 1–30, 2022 | $1,500.00 |
| July 1–31, 2022 | $1,550.00 |
| August 1–31, 2022 | $1,550.00 |
| September 1–30, 2022 | $1,500.00 |
| October 1–31, 2022 | $1,550.00 |
| November 1–30, 2022 | $1,500.00 |
| December 1–31, 2022 | $1,550.00 |
| January 1–27, 2023 | $1,350.00 |
| **Subtotal** | **$22,650.00** |
| **MONTHLY LATE FEES** | |
| August 2021 | $130.00 |
| September 2021 | $120.00 |
| October 2021 | $110.00 |
| **Sub Total** | **$360.00** |

ECF No. [25-1] at 4–5. As to the unpaid storage fees of $24,900.00, and the associated late fees of $360.00, the undersigned finds that Plaintiff has made a sufficient showing of damages.

Plaintiff additionally requests a total of $839.50 in taxable costs, consisting of: (1) a $402.00 filing fee; (2) a $295.00 service of process fee; and (3) a $142.50 U.S. Marshal fee for the arrest of the Vessel. ECF No. [25] at 13. Plaintiff cites to the affidavit of Richard Rusak, Esq., (the "Rusak Declaration"), ECF No. [16-2], as well as the Warrant for Arrest in rem Returned, ECF No. [20], in support of the request for costs. *Id.*

Under Federal Rule of Civil Procedure 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute. *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991) (citing FED. R. CIV. P. 54(d)(1)). As an initial matter, there is no dispute that Plaintiff is the prevailing party in this action as against the Defendant Vessel. Although Rule 54(d)(1) does not define the term "prevailing party," courts have generally interpreted it to require a change in the parties' legal relationship, through some type of court action. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001) (noting that two bases for attorney's fees, "enforceable judgments on the merits and court-ordered consent decrees[,] create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.") (citations and quotations omitted), *superseded by statute on other grounds*, Open Government Act of 2007, Pub.L. No. 110–175, 121 Stat. 2524; *Simon Prop. Grp., L.P. v. Taylor*, No. 20-14374, 2021 WL 4432686, at *2 (11th Cir. Sept. 27, 2021) ("To determine whether a defendant is a prevailing party, we ask whether the plaintiff was rebuffed [in its] efforts to effect a material alteration in the legal relationship between the parties" and "the rejection of the plaintiff's attempt to alter the parties' legal relationship must be marked by judicial imprimatur.") (citations and quotations omitted). As

between the Defendant Vessel and the Plaintiff, this default final judgment, if adopted by the District Court, would constitute a change in the legal relationship, as it establishes a maritime lien held by Plaintiff on the Defendant Vessel. Thus, Plaintiff is considered the prevailing party herein and is entitled to costs under the Rule.

Title 28, United States Code, Section 1920 "defines the term costs as used in Rule 54(d) and enumerates expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 437 (1987) (quotations omitted). The specific costs which may be awarded are as follows:

(1)  Fees of the clerk and marshal;
(2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)  Fees and disbursements for printing and witnesses;
(4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)  Docket fees under section 1923 of this title;
(6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Plaintiff first requests the $402.00 filing fee for the Complaint. ECF No. [25] at 13. The filing fee "clearly falls within the scope of Section 1920(1)," and as such should be awarded to Plaintiff. *Grubbs v. A-1 Gutters and More, LLC*, No. 17-cv-14304, 2018 WL 4410914, at *2 (S.D. Fla. June 29, 2018); *see also Pelc v. Nowak*, 596 F. App'x 768, 771 (11th Cir. 2015) (affirming District Court's award of filing fees under Section 1920).

Next, Plaintiff requests a $295.00 service of process fee, for service on Defendant Ochoa. ECF No. [25] at 13. Plaintiff attached the receipt for the service of process to the Rusak Declaration as Exhibit 2. ECF No. [16-2]. Plaintiff alleges that Defendant Ochoa is the owner of the Defendant Vessel. ECF No. [1] ¶ 6. As such, service is proper on Defendant Ochoa both in

14

his capacity as a Defendant, and, as relevant for costs herein, as the owner of the Defendant Vessel. However, Plaintiff is statutorily entitled to a service cost only up to $65.00—the standard hourly rate that the U.S. Marshal's Service charges for service of documents. *See* 28 C.F.R. § 0.114(a)(3) ("The United States Marshals Service shall routinely collect fees according to the following schedule: [. . .] (3) For process served or executed personally—$65 per hour (or portion thereof) for each item served[.]"). Thus, Plaintiff may recover only $65.00 for service on Defendant Ochoa as owner of the Defendant Vessel.

Additionally, Plaintiff requests a $142.50 U.S. Marshal fee for the arrest of the Vessel. ECF No. [25] at 13. As support for this cost, Plaintiff cites to the Warrant of Arrest in rem returned, ECF No. [20]. Under Title 28, United States Code, Section 1920, "[f]ees of the Clerk and Marshal" are recoverable costs. 28 U.S.C. § 1920(1). The Warrant of Arrest in rem clearly states that the total charges for the arrest on September 30, 2022, were $142.50. ECF No. [20]. As such, Plaintiff should be awarded the $142.50 sought in costs for the Marshal fee.

### C. Plaintiff's Request for Sale of the Vessel

Finally, Plaintiff requests that the Court "order the U.S. Marshal Service to sell the [Defendant Vessel] at public auction in accordance with Supplemental Admiralty Rule E; and [g]rant [Plaintiff] the right to credit bid its judgment" at the sale of the Defendant Vessel. ECF No. [25] at 14. The Supplemental Admiralty Rules apply "to actions in personam with process of maritime attachment and garnishment, actions in rem, and petitory, possessory, and partition actions, supplementing Rules B, C, and D." FED. R. CIV. P. SUPP. ADMIRALTY RULE E(1). As to the Defendant Vessel, the instant action is in rem and concerns enforcement of a maritime lien, thus falling within the scope of the Supplemental Admiralty Rules. Supplemental Admiralty Rule E(9) permits the Court to order that the subject property be sold by the U.S. Marshal, and that the

15

proceeds be "disposed of according to law." *Id.* at E(9). Courts in this Circuit routinely permit U.S. Marshal sales of Defendant Vessels in like circumstances and permit the party enforcing a maritime lien to credit bit its judgment at the sale. *See 5th St. Terminal, Inc. v. M/V Marathon*, No. 17-cv-24239, 2018 WL 3672273, at *3 (S.D. Fla. May 2, 2018) (recommending grant of final default judgment for plaintiff lienholder and directing the U.S. Marshal to sell the defendant vessel at public auction and permitting plaintiff lienholder to credit bid its final judgment), *report and recommendation adopted,* No. 17-cv-24239, 2018 WL 3672250, at *2 (S.D. Fla. June 27, 2018); *Shoreline Marine Fuel Delivery, Inc. v. M/V "Lisanne"*, No. 13-cv-21301, 2013 WL 12383490, at *3 (S.D. Fla. Sept. 16, 2013) (same), *report and recommendation adopted,* Paperless Order Adopting Report and Recommendation, No. 13-cv-21301 (S.D. Fla. Oct. 4, 2013), ECF No. [32]; *Lesser Fin. Enters., LLC v. S/V La Sonata*, No. 22-cv-335-JLB-KCD, 2022 WL 17416499, at *3 (M.D. Fla. Oct. 14, 2022) (recommending grant of final default judgment for plaintiff lienholder and directing sale of defendant vessel "at public action in accordance with Supplemental Admiralty Rule E(9)," and permitting plaintiff lienholder to "bid all or part of its default judgment *in rem*," at the sale), *report and recommendation adopted*, No. 22-cv-335-JLB-KCD, 2022 WL 18763603, at *1–2 (M.D. Fla. Nov. 28, 2022). As such, the undersigned finds that the request for sale of the Defendant Vessel and the request to credit bid Plaintiff's judgment at the sale be granted.

### III. RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Final Default Judgment against the Defendant Vessel, M/Y Sancocho, ECF No. [25] be **GRANTED**, and the District Court should issue an Order that:

1. Final default judgment be entered against the Defendant Vessel on Count 1 of the Complaint, the only count asserted against the Defendant Vessel;

2. Plaintiff be awarded a total of **$25,869.50** against the Defendant Vessel, comprised of: $24,900.00 in unpaid storage fees, $360.00 in associated late fees, a $402.00 filing fee, a $65.00 service fee, and a $142.50 Marshal fee for the arrest of the Defendant Vessel;

3. The U.S. Marshal be directed to sell the Defendant Vessel, M/Y Sancocho, including her engines, tackle, equipment, rigging, furniture, and appurtenances, at public auction in accordance with Supplemental Rule E of the Supplemental Admiralty Rules; and

4. Plaintiff be permitted to credit bid its judgment of **$25,869.50** at the sale of the Defendant Vessel.

IV. **OBJECTIONS**

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, no later than **FOURTEEN (14) DAYS** from the date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on July 17, 2023.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**